IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MURRAY POPKAVE, Trustee of the<br>Louise S. Hodge Multiple Powers<br>Liquidity Trust, | :<br>:<br>:<br>: | |
| Plaintiff, | :<br>: | CIVIL ACTION |
| v. | :<br>: | No. 10-3680 |
| JOHN HANCOCK DISTRIBUTORS LLC, | :<br>:<br>: | |
| Defendant. | : | |

February _7_ , 2011                                                                                                    Anita B. Brody, J.

## MEMORANDUM

### I.     Introduction

On July 8, 2010, Petitioner Murray Popkave ("Popkave" or "Petitioner") filed a Petition to Confirm an Arbitration Award issued by a Financial Industry Regulatory Authority ("FINRA") panel. Notice of Removal ¶ 2, ECF No. 1. On July 27, 2010, Respondent John Hancock Distributors ("JH Distributors" or "Respondent") removed the action from the Court of Common Pleas of Philadelphia County to this court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a). *Id*. ¶ 5. That same day, JH Distributors filed a Petition to Vacate the Arbitration Award. Pet. Vacate, ECF No. 3. JH Distributors alleges that the FINRA arbitrators exceeded their powers and engaged in manifest disregard of the law by proceeding with arbitration when JH Distributors was not the proper party to the dispute. *Id.*

### II.     Background

Popkave is the Trustee of the Louise S. Hodge Multiple Powers Liquidity Trust ("Trust"). Statement of Claim Ex. 1, at 1, ECF No. 5. The Trust was the beneficiary of a variable annuity

1

purchased by Louise S. Hodge ("Hodge") from John Hancock Mutual Life Insurance Company ("JH Mutual") in 1993. *Id.* Subsequently, JH Mutual demutualized into John Hancock Life Insurance Company ("JH Life"). Pet. Vacate ¶ 2. JH Distributors is a subsidiary of JH Life. Tr. Ex. G, at 52, ECF No. 3.

After Hodge died in October of 2007, Popkave sought to reallocate the assets of the annuity into a money market account. Statement of Claim Ex. 1, at 1-2. Popkave has alleged that when he first attempted to effect this transfer, the annuity was worth $619,204.17. *Id.* at 1. At that time, a representative of JH Life gave Popkave claim forms to fill out to effect the transfer. *Id.* at 2. Two weeks after Popkave submitted the forms to JH Life, JH Life told Popkave that his paperwork could not be located. Tr. Ex. G, at 10. Four weeks after Popkave submitted the forms, JH Life told Popkave that the forms were outdated and that he had to complete new versions. *Id.* Popkave has argued that the annuity lost over $350,000 in value during the course of the claim form confusion. Statement of Claim Ex. 1, at 3.

Popkave sought damages from JH Distributors before a FINRA arbitration panel. FINRA panels may arbitrate disputes between customers and FINRA members. Code of Arbitration Procedure for Customer Disputes § 12101(a), FINRA Manual, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4100 (last visited Feb. 7, 2011). Popkave has defended his choice of forum and respondent on the grounds that JH Mutual, a FINRA member, initially sold the variable annuity, Resp. to Mot. Dismiss Ex. D, at 1, ECF No. 3; Answer to Pet. Vacate 2, ECF No. 7; that JH Distributors, a FINRA member, currently underwrites Hancock variable annuities, Resp. to Mot. Dismiss Ex. D, at 1; and that JH Distributors is a subsidiary of JH Life, Tr. Ex. G, at 47; Answer to Pet. Vacate 2. Ultimately, the

2

FINRA panel issued an award of $579,795.14 in Popkave's favor, Award Ex. 8, ECF No. 5, and it is this arbitral award that he seeks to confirm.

JH Distributors brings a Petition to Vacate the Arbitration Award, maintaining that JH Life is the appropriate respondent to Popkave's claim. Pet. Vacate; Answer to Pet. Vacate 2. JH Distributors emphasizes that the issuer of the annuity, JH Mutual, has since demutualized into JH Life. Thus, Popkave received claim forms from and submitted claim forms to JH Life, not JH Distributors. Pet. Vacate ¶ 2.

JH Distributors has previously voiced these arguments. After Popkave initiated the arbitration, JH Distributors filed a Motion to Dismiss, claiming in part that it was not the proper party to the dispute, which the arbitrators denied without explanation prior to the hearing. *Id.* ¶¶ 2, 5. At the hearing itself, following the close of Popkave's case, JH Distributors again moved to dismiss on proper party grounds, and the panel once again denied the motion without explaining its reasoning. *Id.* ¶¶ 9, 13. However, JH Distributors points to the arbitrators' line of questioning surrounding this motion as evidence that they recognized but then deliberately disregarded the applicable law. Finally, at the close of its own case, JH Distributors renewed its Motion to Dismiss a third time, raising the same issue, which the panel again denied without elaboration. *Id.* ¶¶ 16-17.

For the reasons outlined below, I will grant Popkave's Petition to Confirm the Arbitration Award and deny JH Distributors' Petition to Vacate the Arbitration Award.

**III.    Standard of Review**

Review of arbitral awards by courts of law is limited and deferential. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) ("There is a

strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards. As such, an award is presumed valid unless it is affirmatively shown to be otherwise . . . ." (internal citations omitted)); *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) ("If a dispute-resolution mechanism indeed constitutes arbitration under the [Federal Arbitration Act], then a district court may vacate it only under exceedingly narrow circumstances."). "The party seeking to vacate the award bears the burden of proving that vacatur is appropriate." *Franko v. Ameriprise Fin. Servs.*, No. 09-09, 2009 U.S. Dist. LEXIS 48907, at *9 (E.D. Pa. June 11, 2009); *see also Handley v. Chase Bank USA NA*, No. 09-4377, 2010 U.S. App. LEXIS 16921, at *4 (3d Cir. July 15, 2010) ("The party seeking to overturn an award bears a heavy burden . . . .").

The Federal Arbitration Act provides only four grounds upon which arbitral awards may be vacated, 9 U.S.C. § 10(a) (2006),[1] and those grounds are to be exclusive, *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). The ground at issue in this case arises "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In order to overturn an arbitral decision for excess of power on the part of the arbitrators, the Third Circuit has more specifically held that the terms of the award must be "'completely irrational.'" *Franko*, 2009 U.S. Dist. LEXIS 48907, at *10 (citing *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008); *Sherrock Bros., Inc. v. DaimlerChrysler Motors Co.*, 260 F.

---

[1] 9 U.S.C. § 10(a) reads in full:
    (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
      (1) where the award was procured by corruption, fraud, or undue means;
      (2) where there was evident partiality or corruption in the arbitrators, or either of them;
      (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
      (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

App'x 497, 501 (3d Cir. 2008)). To be "completely irrational," the arbitrators' decision must "escape[] the bounds of rationality" and be entirely unsupported by the record. *Id.* (citing *Southco*, 556 F. Supp. 2d at 511; *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)).

The Third Circuit has recognized an additional ground for vacatur in exceptional cases—manifest disregard of the law. *See Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) ("The 'manifest disregard of the law' doctrine is a judicially-created one that is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply.'" (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).[2] Manifest disregard of the law addresses itself to situations in which it is evident from the record that the arbitrator knew the applicable law, and yet chose to ignore it. *See Aetna Cas. & Surety Co. v. Dravo Corp.*, No. 97-149, 1997 U.S. Dist. LEXIS 11648, at *3 (E.D. Pa. Aug. 1, 1997); *see also O.R. Secs., Inc. v. Prof'l Planning Assocs.*, 857 F.2d 742, 747 (11th Cir. 1988) ("If a court is to vacate an arbitration award on the basis of a manifest disregard of the law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it."); *Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir. 1990) (same). "Other courts have held that the 'manifest disregard' principle means that the correct legal standard must have been so obvious that the typical arbitrator would readily and instantly

---

[2] Some courts, instead of referring to manifest disregard as an additional ground for vacatur, have framed manifest disregard as a judicial gloss on the grounds listed in the FAA. *See Hall St.*, 552 U.S. at 585 ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them."); *Telenor Mobile Commc'ns. AS v. Storm LLC*, 584 F.3d 396, 407 (2d Cir. 2009) ("[W]e read *Hall St.* to hold that the FAA set forth the 'exclusive' grounds for vacating an arbitration award, and that the term 'manifest disregard' was merely a 'judicial gloss' on some of those grounds."). Whether manifest disregard is an additional ground or a judicial gloss does not materially change the analysis that follows.

have perceived it, the arbitrator must have been subjectively aware of that standard, and he must have proceeded to ignore that standard in fashioning the award." *Nat'l Fire Ins. Co. v. Sippel Dev. Co.*, No. 06-0390, 2006 Dist. LEXIS 39635, at *6 (W.D. Pa. June 15, 2006); *accord Aetna*, 1997 U.S. Dist. LEXIS 11648, at *5 ("In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug." (quoting *Advest*, 914 F.2d at 10)). In the end, as long as there is a "barely colorable" justification for the arbitrators' decision, however, it is to be upheld. *See Forest Elec. Corp. v. HCB Contractors*, No. 91-1732, 1995 U.S. Dist. LEXIS 1135, at *29 (E.D. Pa. Jan. 30, 1995); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997).

It remains an open question whether courts of the Third Circuit will continue to apply the manifest disregard of the law standard following the Supreme Court's decision in *Hall Street* that the four FAA grounds for vacatur are to be exclusive. *See Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 176-77 (3d Cir. 2010) ("In the wake of *Hall Street*, a circuit split has emerged regarding whether manifest disregard of the law remains a valid ground for vacatur. This Court has not yet entered that debate."). If manifest disregard of the law is no longer a valid ground for vacatur, parties seeking to vacate arbitral awards might face a higher hurdle, as the grounds for vacatur would be even more limited than before. I need not reach the issue of the ongoing viability of the manifest disregard standard at this time, however. Even applying the old standard, with its arguably lower bar for vacatur, I conclude that the FINRA arbitration panel in this case did not manifestly disregard the law. Returning to the statutorily-listed grounds, and the only FAA standard arguably applicable to this case, I similarly conclude that the panel did not exceed its power.

## IV. Discussion

I will not vacate the arbitral award on excess of power grounds, because 1) Respondent has not carried its burden of proving that vacatur for excess of power is appropriate, and 2) the award is not completely irrational. I similarly find that the panel did not manifestly disregard the law, because 1) Respondent did not adequately present the law to the arbitrators, 2) the arbitrators did not independently recognize the law, 3) the law was not otherwise obvious, and 4) there are justifications in the record for the arbitrators' decision that are at least barely colorable.

### A. Excess of Power

#### 1. Respondent's Failure To Meet Its Burden

Respondent has not demonstrated the appropriateness of vacatur on excess of power grounds. As discussed above, the FAA does indeed allow courts to overturn arbitration awards when "the arbitrators exceeded their powers," 9 U.S.C. § 10(a)(4) (2006), but "[t]he party seeking to vacate the award bears the burden of proving that vacatur is appropriate." *Franko v. Ameriprise Fin. Servs.*, No. 09-09, 2009 U.S. Dist. LEXIS 48907, at *9 (E.D. Pa. June 11, 2009). In its Petition to Vacate, Respondent invokes the "excess of power" ground for vacatur, but mainly discusses manifest disregard of the law, and presents facts from the arbitration allegedly illustrating such manifest disregard. Respondent only cursorily returns to excess of power at the end of its brief. Pet. Vacate, ECF No. 3. Thus, Respondent has failed to meet its burden of proving the appropriateness of vacatur based on excess of power as an independent ground.

#### 2. Not Completely Irrational

Even if Respondent had presented a more complete excess of power argument, I would still not vacate the award on this ground. Vacatur for excess of power requires that the award be

completely irrational and entirely unsupported by the record. *See Sherrock Bros., Inc. v. DaimlerChrysler Motors Co.*, 260 F. App'x 497, 501 (3d Cir. 2008); *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993); *Franko*, 2009 U.S. Dist. LEXIS 48907, at *10; *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008). The award in this case does not escape the bounds of rationality, and does find support in the record. Petitioner argued and Respondent did not dispute that the original contract allowed for FINRA arbitration. Resp. to Mot. Dismiss Ex. D, at 1; Answer to Pet. Vacate 2. Petitioner introduced into evidence a website indicating that JH Distributors underwrites variable annuities. Resp. to Mot. Dismiss Ex. D. JH Distributors, the proper party according to Petitioner, is the subsidiary of JH Life, the proper party according to Respondent. Tr. Ex. G, at 52; Answer to Pet. Vacate 2. In light of this evidence, it was not completely irrational for the arbitrators to conclude that Popkave was entitled to pursue his claim against JH Distributors before a FINRA panel.

### B. Manifest Disregard of the Law

#### 1. No Presentation of the Law

The FINRA arbitration panel did not manifestly disregard the applicable law in this case because the panel was not sufficiently aware of the applicable law in this case.

As stated above, manifest disregard of the law results when arbitrators know the law but choose to ignore it. *See, e.g.*, *Aetna Cas. & Surety Co. v. Dravo Corp.*, No. 97-149, 1997 U.S. Dist. LEXIS 11648, at *3 (E.D. Pa. Aug. 1, 1997). Knowledge of the law by arbitrators, however, is generally not to be presumed:

> Rather, in applying the manifest disregard of the law test, an arbitrator is ordinarily assumed to be a blank slate unless educated in the law by the parties. Therefore, in determining what legal principles were known to the arbitrators for the purposes of applying the manifest disregard of the law test, the Court must

8

> impute to the arbitrators only knowledge of governing law identified by the
> parties to the arbitration.

*MetLife Sec., Inc. v. Bedford*, 456 F. Supp. 2d 468, 473 (S.D.N.Y. 2006) (internal quotations and citations omitted); *see also Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) ("To the extent that the arbitration panel was not made aware of the governing law that Black Box now argues is controlling in this matter, it is difficult to see how the panel refused to apply or otherwise ignored this law.").

In the case at hand, Respondent failed to educate the panel as to the applicable legal principles. Although Respondent filed a written motion to dismiss, and argued for dismissal twice during the hearing, Respondent continually pleaded facts only, and did not present a legal framework to govern the arbitrators' decision.

More specifically, in its written motion to dismiss, Respondent made several factual assertions such as "the subject annuity was issued in 1993 by John Hancock Mutual Life Insurance Company," "the company was demutualized and its current name is John Hancock Life Insurance Company," "[i]t was to John Hancock Life Insurance Company, and not the separate entity, JH Distributors, that [Petitioner] submitted the disputed claim form," and "the proper party in this dispute . . . is John Hancock Life Insurance Company." Mot. Dismiss 1-2, ECF No. 1. However, Respondent included no discussion of the applicable principles of contract or corporate law. Thus, when presented with Respondent's first motion to dismiss, the arbitrators were given no legal framework in which to place the facts, and no legal principles by which to determine whether Respondent's conclusion as to the "proper party" was legally correct.

Similarly, at the hearing, Respondent again argued facts but not law to the panel. In renewing its motion to dismiss, Respondent stated that Petitioner did not "have one single

9

syllable of evidence that suggests that John Hancock Distributors sold the product, administered the product, dealt with any claim forms on this product, had anything to do with it." Tr. Ex. G, at 45. However, Respondent failed to state why this alleged evidentiary shortcoming was legally significant.

Any statements made by Respondent that verged upon legal principle fell short and were inconsistent. At times, Respondent claimed that JH Distributors was not the "proper party," suggesting a contractual argument. *See, e.g.*, *id*. At other times, Respondent suggested a procedural issue, namely that Petitioner had failed to carry his burden of demonstrating that he had filed a claim against the appropriate Respondent. *See, e.g.*, *id.* Respondent also hinted that the issue was one of corporate law and the principles governing corporate affiliates, parents, and subsidiaries. *See, e.g.*, *id.* Yet on each occasion, Respondent did not go into sufficient depth to give the panel a sense of the governing law. Rather, Respondent's movement from one undeveloped theory to the next likely created legal confusion.

In sum, in both its written motion to dismiss and at oral argument, Respondent did not educate the arbitrators on the governing law, and therefore the arbitrator's ultimate decision could not have been in manifest disregard of that law.

### 2. No Independent Recognition of the Law

The arbitrators also did not independently recognize and then choose to ignore the law. There was no opinion by the arbitrators revealing as much, nor do the statements made by the arbitrators at the hearing amount to recognition and disregard.

"When arbitrators do not state their reasons for an award, 'it is nearly impossible for the court to determine whether they acted in disregard of the law.'" *Aetna Cas. & Surety Co. v.*

10

*Dravo Corp.*, No. 97-149, 1997 U.S. Dist. LEXIS 11648, at *4 (E.D. Pa. Aug. 1, 1997) (quoting *O.R. Sec., Inc. v. Prof'l Planning Assoc., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988)). In such a case, "[a] party seeking to vacate an arbitration award on the ground of manifest disregard of the law may not proceed merely by objecting to the results of the arbitration." *Id.* Rather, "'[t]here must be some showing, other than the result obtained, that the arbitrators knew the law and expressly disregarded it.'" *Id.* (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir. 1990)). On three separate occasions, Respondent argued to the panel that it was not the proper party to the dispute. Each time, however, the panel denied the motion without explanation. Faced with such a sparse record, it is difficult to conclude that the arbitrators recognized the law but chose to disregard it, thereby engaging in manifest disregard of the law.

Moreover, the record does not reveal recognition of the law by the arbitrators during the hearing. First, Respondent alleges that "the panel recognized there was an obligation to prove that JH Distributors was the proper party in this dispute." Pet. Vacate 7. However, elsewhere in its pleadings, Respondent is more cautious, writing only that "the Chair pointed out to the Claimant that JH Distributors argued it was the Claimant's burden of proof to establish the proper party in this case." Pet. Vacate ¶ 10. Indeed, what in fact transpired at the hearing was a series of mere questions on the subject. One arbitrator inquired, "Well who's got the burden is the questions [sic] I have to ask? In other words do they have the burden of showing that, that other entity whose name I won't even mention is the proper party or do you have the burden?" Tr. Ex. G, at 47. Thus the arbitrators did not here reach any conclusion on the law as to who bore the burden; rather, they revealed only uncertainty. Respondent may seek to argue that, by asking who bore the burden, the arbitrators recognized at least that there was a burden to be borne. However, such an inferential step does not demonstrate the clear understanding and express

11

disregard of the law that is required before courts can vacate arbitral awards. *See generally Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) ("Black Box 'bears the burden of proving that the arbitrators were *fully* aware of the existence of a *clearly defined* governing legal principle, but refused to apply it, in effect, ignoring it.'" (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (emphasis added)).

Respondent next claims that the panel recognized but disregarded the law that "the successor company in interest . . . holds the funds for the subject annuity, and that the law requires the Claimant to look to the entity that is the successor at interest to pay the money." Pet. Vacate 7-8. However, once again, the record indicates only that the arbitrators posed a series of questions on the issue. First, the arbitrators' discussion of the subject was preceded and qualified by their request for a "recess at this juncture" because Respondent had presented "a significant question." Tr. Ex. G, at 48. Thus any subsequent statements were shrouded in uncertainty. Indeed the arbitrator only further revealed his indecision when he noted "the question seems to be whether or not he still has a right to pursue the party whom he entered into the contract with who was in fact and is presently holding the funds that are in the contract," and when he inquired "where are the dollars if you chase the contract and who was responsible for enforcing it." *Id.*

The closest the arbitrator came to definitively recognizing a legal principle was when he stated that "we would normally assume within the law the entity that's the successor at interest would be who one would look to, to pay the money if this subsidiary or whatever it is with regard to the parent who entered into this particular contract hasn't got the resources." *Id.* But the arbitrator here qualified his assumption with the word "normally." Moreover, one single convoluted sentence in the course of an oral hearing, uttered after recess to confer on the law was requested, cannot be held to constitute full recognition of a definitive legal principle by an

12

arbitral panel. *See generally Black Box Corp.*, 127 F. App'x at 25; *Duferco Int'l Steel Trading*, 333 F.3d at 389.

Respondent's final points—that the panel recognized the difficulty of collecting an award from JH Distributors when the funds were held by JH Life, and that the panel asked whether Petitioner would be prejudiced by being forced to litigate in another forum, Pet. Vacate 8—do not highlight legal principles discussed and ignored by the panel. Rather, these remarks by the panel represent practical questions posed by the arbitrators before taking a recess to reach a conclusion on the question of law presented.

As an additional consideration, to find manifest disregard of the law in the aggressive questioning and complicated hypotheticals of arbitrators would have the effect of discouraging vigorous oral argument in arbitration. Such exchanges must rather be encouraged to facilitate the full and fair alternative resolution of disputes.

In sum, there was no firm statement of the law indicating recognition on the part of the arbitrators. Without full awareness of the governing legal principle or principles, there was nothing for the arbitrators to manifestly disregard.

### 3. No Obvious Legal Principle

To repeat, Respondent did not fully educate the arbitrators on the applicable law, and the arbitrators did not demonstrate independent recognition of the applicable law. To refute another potential argument, the applicable law in this case was not so obvious that the arbitrators should be held to have known it.

It has been suggested that "'[i]n certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug.'" *Aetna Cas. & Surety Co. v. Dravo Corp.*, No. 97-149, 1997 U.S. Dist. LEXIS 11648, at *5 (E.D. Pa. Aug. 1, 1997) (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 10 (1st Cir. 1990)); *see also Nat'l Fire Ins. Co. v. Sippel Dev. Co.*, No. 06-0390, 2006 Dist. LEXIS 39635, at *6 (W.D. Pa. June 15, 2006).

The governing legal standard was not so apparent here. Respondent itself was not able to clearly identify a contractual principle until August of 2010, after over a year of litigation, three motions to dismiss, and a petition to vacate. Only then did Respondent state in a reply to Petitioner before this court that "only a party to a contract can be charged with its breach." Reply 3, ECF No. 11. Respondent's struggle to pinpoint the allegedly governing law indicates that the allegedly governing law was not widely familiar, pristinely clear, or irrefutably applicable. Nor was the story as simple as Respondent suggested in its reply. The party to the contract had ceased to exist, and the two potential respondents to the action were corporate affiliates. Thus other possible governing legal principles were at play, such as the laws surrounding successors at interest and the relationship between corporate parents and subsidiaries. These are quite complex, not widely familiar or pristinely clear.

To conclude, only if an overarching legal principle was obvious and then cast aside may I overturn the arbitrators' decision in spite of the fact that the parties failed to educate the panel and in spite of the fact that the panel did not demonstrate knowledge of the law. There was no such singularity or clarity of principle in this case.

### 4. At Least "Barely Colorable" Justifications

Finally, it bears repeating that there are justifications for the arbitrators' decision that are at least barely colorable. As the Second Circuit has explained:

> When arbitrators decline to provide an explanation for their decision, a reviewing court can only infer from the facts of the case whether the arbitrators appreciated the existence of a clearly governing legal principle but decided to ignore or pay no attention to it. In such a case we must confirm the arbitrators' decision if a ground for the arbitrators' decision can be inferred from the facts of the case. This is so even if the ground for their decision is based on an error of fact or an error of law. *. . . If there is even a barely colorable justification for the outcome reached, the court must confirm the arbitration award.*

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (internal citations and quotations omitted) (emphasis added); *see also Jeffrey M. Brown Assocs., Inc. v. Allstar Drywall & Acoustics*, 195 F. Supp. 2d 681, 685 (E.D. Pa. 2002) ("[S]o long as there is some support in the record for the arbitrator's determinations, the award must be upheld.").

According to the submissions and evidence this case, Hodge was initially entitled to FINRA arbitration, Resp. to Mot. Dismiss Ex. D, at 1; Answer to Pet. Vacate 2; JH Distributors currently underwrites variable annuities, Resp. to Mot. Dismiss Ex. D; JH Distributors and JH Life are closely related entities, Tr. Ex. G, at 52; Answer to Pet. Vacate 2. Although the panel may have made factual or legal errors with regard to this evidence,[3] the record provides at least

---

[3] Respondent also makes arguments that the panel manifestly disregarded the evidence, and committed mistakes of fact and law. However, manifest disregard of the law does not encompass manifest disregard of the evidence, or mistakes of fact or law. Furthermore, manifest disregard of the evidence and mistakes of fact or law are not grounds for vacatur in their own rights. *See Sherrock Bros. v. DaimlerChrysler Motors Co.*, 260 F. App'x 497, 499 (3d Cir. 2008) ("Manifest disregard for the law means more than mere legal error . . . ." (internal citations omitted)); *Clarendon Nat'l Ins. Co. v. NCO Fin. Sys.*, No. 03-0069, 2004 U.S. Dist. LEXIS 7098, at *7-8 (E.D. Pa. Apr. 8, 2004) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors . . . ." (internal citations omitted)); *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) ("[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." (internal citations and quotations omitted)). Respondent states that there was "no evidence . . . connecting JH Distributors to the product" and "clear evidence that John Hancock Life Insurance Company [was] the only proper party in this dispute." Pet. Vacate ¶¶ 16-17. Respondent also alleges that "Claimant failed to meet" its burden of proving that JH Distributors was the proper party "as a matter of law," or, in the alternative, that it, JH Distributors, "clearly met" its burden of showing that "it was not the proper party." *Id.* 7. Respondent then concludes

barely colorable justifications for the arbitrators' decision that Popkave could sue JH Distributors and that their dispute could be arbitrated before FINRA. Once again, I can make no manifest disregard finding.

V. **Conclusion**

For the reasons stated above, I will grant Petitioner's Petition to Confirm the Arbitration Award and deny Respondent's Petition to Vacate.

s/ Anita B. Brody

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:   Copies **MAILED** on _____ to:

---

that "the Panel's decision . . . [was] not supported by any facts or law and should be vacated." *Id.* To the extent these arguments ask me to vacate the award on manifest disregard of the evidence, or mistake of fact or law grounds, I cannot do so.